**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 22-cv-01813-RM-KLM

4221 MONOCO STREET, L.L.L.P., a Colorado limited liability limited partnership,

     Plaintiff,

v.

CHASKEL FRANKLE, an individual,

     Defendant.

_____

**ORDER**
_____

     This matter is before the Court on Plaintiff's Motion for Default Judgment ("Motion")

against Defendant, filed pursuant to Fed. R. Civ. P. 55(b)(2).  (ECF No. 14.)  The Motion was

filed after the Clerk entered default.  (ECF No. 11.)  For the reasons stated below, the Motion is

granted.

**I.     LEGAL STANDARD**

     Default judgments are not the favored manner for resolving litigation, as they are a harsh

sanction and policy reasons favor resolution of disputes on the merits.  *In re Rains*, 946 F.3d 731,

732 (10th Cir. 1991).  Thus, a default judgment "must normally be viewed as available only

when the adversary process has been halted because of an essentially unresponsive party. In that

instance, the diligent party must be protected lest he be faced with interminable delay and

continued uncertainty as to his rights."  *Id.* (quoting *H. F. Livermore Corp. v. Aktiengesellschaft*

*Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).  A default judgment serves to protect a plaintiff from such a possibility.  *Id.*

Whether to enter a default judgment is committed "to the district court's sound discretion."  *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). Before it may grant a motion for default judgment, the Court must take two steps.  First, the Court has an affirmative duty to ensure its jurisdiction over the subject matter of the action and the parties.  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).  Then, the Court should consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (by his default, defendant relieved plaintiff from having to prove complaint's factual allegations; the judgment, however, must be supported by sufficient basis in the pleadings); *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015).

## II.     BACKGROUND

Plaintiff is a limited liability limited partnership, 4221 Monaco Street, LLLP, organized under the laws of Colorado, and three Colorado residents comprise its partners.[1]  Defendant, Chaskel Frankl, is an individual and resident of New York.  The conflict between the parties began when Plaintiff decided to auction off its property, which is located in Denver, Colorado.

Plaintiff's suit alleges three claims for relief and presents them in the alternative. As pertinent here, the first claim is for breach of the Purchase Agreement.  Plaintiff engaged a firm,

---

[1] Because, in a default proceeding, the Court takes the well-pled allegations in a complaint as true, having been admitted by the defendant, and therefore the Court takes its summary of the facts from Plaintiff's Complaint (ECF No. 1).

Ten-X, to conduct the auction, which took place from June 20 through 22, 2022.  The bidding for the property opened at approximately $8,000,000 and Defendant ultimately won the auction with a bid of $18,000,000.  Ten-X confirmed that Defendant had adequate funds to qualify as a participant in the auction.

The day after the auction concluded the Parties executed a Purchase Agreement.  Among the terms in that Agreement was a provision requiring Defendant, as the successful purchaser, to deposit $1,000,000 in earnest money on the day after Plaintiff, as seller, countersigned the Agreement.  (ECF No. 1-1, § 2.)  The Agreement also contained the following provision:

> Buyer and Seller agree that it would be extremely difficult to determine Seller's actual damages resulting from a breach by Buyer.  In the event of a breach by Buyer, Seller shall be entitled to an amount equal to the earnest money deposit as liquidated damages and as Seller's exclusive remedy.  Buyer agrees that such amount is a reasonable pre-estimate of Seller's actual damages for breach of this Agreement and is not a penalty.  If Closing Agent is in possession of the earnest money deposit, then Closing Agent shall deliver the earnest money deposit to Seller.  Despite the forgoing, if applicable law limits the amount of the liquidated damages payable to Seller upon a breach by Buyer, Seller shall only be entitled to the amount permitted by law, and any excess shall be promptly returned to Buyer.

(Id., § 8.)  The Parties specifically initialed this provision.  (Id.)  Two other provisions are important to this Motion.  In Section 13 of the Agreement, which covers "Miscellaneous" matters, the Parties specified that the Agreement would be interpreted, construed, applied, and enforced in accordance with the laws of the state in which the property at issue is located—in this case, Colorado.  (Id., § 13.)  The Parties also specified that "[i]n any action, proceeding or arbitration arising out of this Agreement, the prevailing party (defined as the party who prevails as to a substantial part of the litigation or claim) shall be entitled to reasonable attorneys' fees and costs.  (Id.)

The Parties executed the Agreement on June 23, 2022.  Defendant, however, failed to deposit the required earnest money and therefore Plaintiff declared him to have breached the Agreement.  Plaintiff sent a notice of the breach to Defendant who never responded.  Thus, on July 22, 2022 Plaintiff filed this action.

This Court issued a summons for Defendant (ECF No. 5), and the summons was returned executed, having been served on Defendant personally (ECF No. 7).  Defendant never filed an answer or any other responsive pleading.  (See docket.)  Nor did Defendant respond to the efforts of Plaintiff's counsel to communicate and confer.  (ECF No. 12.)  Plaintiff filed a Motion for Entry of Default (ECF No. 8) and an Amended Motion for Entry of Default against Defendant (ECF No. 11) pursuant to Fed. R. Civ. P. 55(a).  The Clerk entered default as to Defendant on September 2, 2022.  Defendant did not respond to the entry of default and Plaintiff filed a Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b).

## III.    DISCUSSION

### A.  Jurisdiction

The Court finds that the jurisdictional prerequisites for granting default judgment are satisfied in this case. The Court has diversity subject matter jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

In addition, the Court concludes that it has personal jurisdiction over Defendant in this case.  "[T]he plaintiff need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials."  *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773

(10th Cir. 1997).  The "'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  A "plaintiff seeking to establish personal jurisdiction over an out-of-state defendant must show both that the exercise of jurisdiction is sanctioned by the state's long-arm statute and that it comports with the requirements of due process under the Fourteenth Amendment." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022).  Personal jurisdiction in a specific case (as opposed to jurisdiction for all purposes) is limited to those cases in which the out-of-state defendant has "purposefully directed its activities at residents of the forum state," and the plaintiff's injuries arise from those forum-related activities. *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 3400671 (D. Colo. Aug. 3, 2021), modified on reconsideration, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021) (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903-04 (10th Cir. 2017)).

Colorado's long-arm statute confers on its courts the maximum jurisdiction as comports with the Due Process Clause of the United States and Colorado Constitutions. *State ex. Rel. Weiser v. JUUL Labs, Inc.*, 2022 CO 46, ¶ 33, 517 P.3d 682, 690.  Thus, this Court will have personal jurisdiction over Defendant as long as such jurisdiction comports with due process.  As noted, due process is satisfied in cases in which the defendant has purposefully directed his or her activities at Colorado and the plaintiff's injuries arose from those forum-related activities.  In this case, the Court has no trouble concluding that Defendant purposefully directed his activities at Colorado, having decided to bid on and purchase a property located in Denver.  Plaintiff's

injuries, in turn, arose directly out of that contact, as Defendant was obligated to pay earnest money for that same property and failed to do so.  Thus, the jurisdictional requirements for a default judgment have been met in this case.

### B.  Analysis

Plaintiff served Defendant on August 9, 2022, and Defendant has as yet failed to respond in any form.  (ECF No. 7.)  The time for such a response has now elapsed.  Fed. R. Civ. P. 12(a).

The Court also finds that Plaintiff's well-pleaded factual allegations support a judgment on Plaintiff's first claim, which is for breach of contract against Defendant.  Plaintiff's Complaint and attached exhibits, taken as true, establish the elements of that claim.  "To prevail on a claim for breach of contract, a party must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Gentry v. Kostecki*, No. 20-CV-1284-WJM-STV, 2022 WL 168704, at *2 (D. Colo. Jan. 19, 2022).  In this case, the allegations in Plaintiff's complaint reveal that the Parties entered into a written contract when they signed the Purchase Agreement.  Plaintiff performed its obligation under that Agreement when it took its property off the market and held it for sale to Defendant.  Defendant did not deposit the required earnest money, thereby failing to perform his obligation under the contract. And Plaintiff was damaged by the time the property was off the market and not available to sell to a different buyer.  Thus, Plaintiff has presented well-pleaded facts that support the breach of contract claim and is therefore entitled to judgment on the first claim.

Plaintiff's second claim is for promissory estoppel.  In that claim, Plaintiff asks the Court to enforce Defendant's promise to pay the $1,000,000 in earnest money.  "Colorado law

recognizes promissory estoppel as an alternative theory of recovery to the formation of a

contract," however. *Carthon v. Balfour Senior Care, LLC*, No. 21-CV-00007-MEH, 2021 WL

2954685, at *3 (D. Colo. June 16, 2021); *see also Soderlun v. Pub. Serv. Co. of Colorado*, 944

P.2d 616, 620 (Colo. App. 1997) (noting that "the concept of promissory estoppel was developed

by equity to enforce, in appropriate circumstances, a unilateral promise for which no

consideration was provided. . . . Circumstances that warrant the application of the promissory

estoppel doctrine result in the creation of a *contract*." Emphasis original). "The alternative

remedy of promissory estoppel is never reached when there has been mutual agreement by the

parties on all essential terms of a contract." *Scott Co. of California v. MK-Ferguson Co.*, 832

P.2d 1000, 1003 (Colo. App. 1991), *overruled on other grounds by Lewis v. Lewis*, 189 P.3d

1134 (Colo. 2008). In this case, the promise at issue in the breach of contract claim is identical

to that at issue under this promissory estoppel claim, and the Parties made a contract and agreed

on all the essential terms of that contract. Plaintiff, therefore, is not entitled to recover under

both theories. Thus, the motion for a default judgment is denied as to the second claim.

Plaintiff does not ask for a default judgment on its third claim for unjust enrichment,

which, it concedes it pled in the alternative to Counts 1 and 2. Therefore, the Court moves on to

the fourth claim, for breach of the implied duty of good faith and fair dealing. This duty, like the

equitable estoppel claim, is linked directly to the contract claim. *See Denny Const., Inc. v. City

& Cnty. of Denver ex rel. Bd. of Water Comm'rs*, 170 P.3d 733, 737 (Colo. App. 2007), reversed

on other grounds, 199 P.3d 742 (Colo. 2009). "Because the implied covenant of good faith and

fair dealing is a contractual covenant, a breach of that covenant is a breach of contract." *Id.*

Thus, a claim for a breach of the covenant of good faith and fair dealing is subsumed within the

claim for breach of contract.  *Id.*  In fact, Plaintiff acknowledges as much, and "does not seek additional money damages for [Defendant's] liability" under that claim.  (ECF No. 15.)  The Court therefore denies the Motion for Default Judgment as to the fourth claim.

### C.  Damages

"In addition to finding that Plaintiff has a legal basis for relief, default judgment cannot be entered until the amount of damages has been ascertained."  *Villanueva*, 77 F. Supp. 3d 1058, 1075 (D. Colo. 2015).  Furthermore, "a court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."  *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).  Attorney's fees must not be ordered without a hearing to determine the amount.  *Id.*  A live hearing, however, "is not always required.  Rather, the hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it."  *Malluk v. Berkley Highlands Productions, LLC*, 19-cv-01489-CMA, 2020 WL 1033339 at *2 (March 3, 2020).

In this case, the Agreement provided for liquidated damages of $1,000,000 (ECF No. 15-1), and Plaintiff asks that the Court award it that amount.  Because this is a liquidated amount, and therefore can be properly awarded without an evidentiary hearing, the Court grants the Plaintiff $1,000,000 in damages.

"[P]rejudgment interest is a matter in this Court's discretion," *Keybank Nat'l Ass'n v. Northwest Prof. Color, Inc.*, No. 15-CV-2180-WJM-CBS, 2016 WL 1446134, at *3 (D. Colo. Apr. 13, 2016), at least in the absence of a statutory provision, *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982).  The Court must determine whether, by

awarding prejudgment interest, it is compensating the injured party and whether, even if such an award is compensatory, it is nevertheless inequitable. *Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276, 1286 (10th Cir. 2002). In this case, the Court concludes that an award of prejudgment interest would serve to compensate Plaintiff for the loss of the use of its money during the period between when Defendant breached the Agreement and the time of the judgment. Nor does the Court conclude that such an award would be in some way inequitable to Defendant. Therefore, the Court concludes that Plaintiff is entitled to an award of prejudgment interest.

As Plaintiff states, the Agreement does not include a specific rate of interest that applies, and therefore, under Colorado law, the interest rate is set at eight (8) percent per annum, compounded annually. § 5-12-101, C.R.S. (2022). In this case, Plaintiff's injury accrued on the date that it informed Defendant that he had breached the Agreement, June 28, 2022.

"[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (quoting *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1280 (3rd Cir. 1987)). The rate of postjudgment interest is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C.A. § 1961. For the week ending October 28, 2022, that rate was 4.55 percent.

Plaintiff also notes that the Agreement provides that "[i]n any action, proceeding or arbitration arising out of this Agreement, the prevailing party (defined as the party who prevails

as to a substantial part of the litigation or claim) shall be entitled to reasonable attorneys' fees and costs."  (ECF No. 15-1.)  In addition, Fed. R. Civ. P. 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party," and Rule 55 also provides for such an award.  *See also PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft Leasing Grp., Inc.*, 246 F.R.D. 17, 18 (D.D.C. 2007) ("Rule 55(b)(2) authorizes the Court to enter a default judgment for the amount claimed plus costs.").  The Court concludes that Plaintiff should be awarded its costs and reasonable attorney fees.  Plaintiff requests $895.30 in costs, noting that those costs represent, at least in part, money expended on process servers because Defendant purportedly attempted to evade service.  (ECF No. 15.)  The Court concludes $895.30 is reasonable and awards Plaintiff that amount.

Plaintiff also requests $23,379.15 in attorney fees which, Plaintiff asserts, represents slightly more than 50 hours of work by its attorneys.  (ECF No. 15.)  The Court notes that, because of Defendant's failure to respond, Plaintiff has filed only the Complaint (ECF No. 1), the Motion for Entry of Default (ECF No. 10), this Motion for Default Judgment (ECF No. 14) and the Brief in Support of this Motion (ECF No. 15).  In other words, not a great deal of time and labor were required.  In addition, the Court finds that the questions were not novel or difficult.  Thus, these factors weigh against awarding the full $23,379.15 fee requested.  Although Plaintiff did not submit billing records, and therefore the Court is unable to parse the time spent on each task, the Court concludes that an award of attorney fees in the amount of $11,689.58, or half the requested amount, is reasonable under these circumstances.

**IV.     CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Default Judgment (ECF No. 14) is GRANTED and the Court ORDERS that the Clerk enter judgment for a sum certain against Defendant as follows:

1. That Defendant shall pay Plaintiff $1,000,000.00;

2. That Defendant shall pay Plaintiff prejudgment interest at a rate of 8% per annum;

3. That Defendant shall pay Plaintiff $895.30 in costs;

4. That Defendant shall pay Plaintiff $11,689.58 in attorney fees; and

5. That pursuant to 28 U.S.C. § 1961, post-judgment interest shall run from today on the amounts awarded herein until the date of payment at a rate of 4.55%. compounded annually.

DATED this 2nd day of November, 2022.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge